THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**RICKY VINCENT PENDLETON,**

      **Plaintiff,**

**v.**                                      **Civil Action No. 2:22-cv-00178**

**BETSY JIVIDEN,** *et al.*,

      **Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**COMES NOW** Defendants Betsy Jividen and C.J. Rider,[1] by counsel, Jodi Tyler, Assistant Attorney General, in support of their contemporaneously filed Motion to Dismiss, and submits the following Memorandum of Law:

**I. FACTUAL BACKGROUND**

Plaintiff asserts claims against Defendant Betsy Jividen, Commissioner of the West Virginia Division of Corrections and Rehabilitation (hereafter "WVDCR"), and Defendant C.J. Rider, WVDCR Deputy Director Reentry and Offender Activities,[2] pursuant to 42. U.S.C. § 1983, for violations of his rights under the First Amendment Free Exercise and Establishment Clauses (hereafter "First Amendment"), the Religious Land Use and Institutionalized Persons Act (hereafter "RLUIPA"), and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff is currently incarcerated at Mount Olive Correctional Center (hereafter "MOCC"), serving felony sentences for kidnapping, malicious wounding, grand larceny, and aggravated

---

[1] At the time of this filing, Defendant Donnie Ames, Superintendent of Mount Olive Correctional Center and Jail, had not yet been served with the Complaint.
[2] Defendant Rider manages inmate religious services, including the religious special diet.

robbery. Plaintiff states in his Complaint that Defendants are preventing him from practicing his "sincerely held belief of God Centered Culture of Islam" with policies that force Plaintiff to forfeit his religious dietary practice of a pescatarian diet. *See* Compl. at pg. 4-5. According to Plaintiff, this religious pescatarian diet allows him to eat all vegetables, fruits, spices, herbs, dairy products and fish. *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 9. Specifically, Plaintiff asserts that in 2014, the WVDCR established a new religious diet policy pursuant to WVDCR Policy Directive 511.00 entitled "Religious Special Diet" which does not include meat, but only soy based protein products as a meat substitute. *Id.* at pg. 2. Plaintiff asserts that these soy based products cause him "abdominal pain, digestive problem, at times vomiting, and other issues like serious constipation." *Id.*

WVDCR Policy Directive 511.00 states that only one "religious special diet" will be offered to any inmates requesting a "religious special diet" and that it is not particular to any one religion. The Policy Directive outlines the dietary restrictions of the Kosher, Halal and Brahman diets, before stating that "the Religious Special Diet is intended to provide a nutritionally adequate meal that meets dietary restrictions imposed by various beliefs." *See* Policy Directive 511.00 [ECF No. 2, Exhibit H] at pg. 2. The policy further explains that "the Religious Special Diet is *not intended* to provide *everything* an inmate of any faith may eat." *Id.* (emphasis added). The policy explicitly states that "[m]eat is never an item in the religious special diet." *Id.*

The Religious Special Diet was designed to meet the dietary *restrictions* of each faith group represented in the inmate population. The most restrictive is the Hare Krishna faith, which follows the Brahman diet. Because the Religious Special Diet is intended to comply with the dietary restrictions of *all* three of the above-identified religions and all other unidentified religions, and the Brahman diet does not contain any meat products, the Religious Special Diet also does not

offer any meat products.[3] *See id.* In recognizing that some religions allow for certain foods/food groups not included in the Religious Special Diet, the policy explicitly states that "an inmate may supplement his/her diet by purchasing allowable items . . . from the commissary, if they are readily available in the commissary." *Id.* at pg. 4. However, "[t]his does not require the commissary to carry items for specific faith groups." *Id.*

As Plaintiff correctly states in his Memorandum of Law that if an inmate chooses not to partake in the Religious Special Diet, in which case no meat would be provided, then he or she would receive the "regular" diet, which may contain other types of meat besides fish. *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 3, 6.

While it is somewhat unclear, it appears that the Plaintiff, in his Memorandum of Law, is suggesting an alternative and "less restrictive policy" where he would be placed on the regular inmate diet, but be permitted to replace eggs or meat with other non-meat substitutes such as peanut butter, beans, cream cheese, or extra vegetables, to alleviate his alleged digestive issues with the soy products that are served with the Religious Special Diet. *See id.* at pg. 7.

Plaintiff claims that he is being "forced to consume another dietary practice of the Hare Krishna, Brahman tenets" and that this imposes a substantial burden on his right to exercise his religious beliefs through the pescatarian diet pursuant to the First Amendment Free Exercise Clause and RLUIPA. *See id.* at pg. 2. Plaintiff contends that Defendants are indifferent to Plaintiff's religious belief and that Policy Directive 511.00 "makes a 'conscious or intentional interference' with Plaintiff's rights." *Id.* at pg. 5. Plaintiff further alleges that Defendants have

---

[3] Plaintiff alleges that inmate Thomas Drescher was involved in the creation of the Religious Special Diet because Inmate Drescher practices the Hare Krishna faith. *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 10. In 2007, a similar civil action filed by Mr. Drescher in the Circuit Court of Kanawha County, West Virginia, was dismissed on the grounds that his constitutional and RLUIPA rights were not violated. *See Blake v. Rubenstein*, No. CV 2:08-0906, 2016 WL 5660355, at *9 (S.D.W. Va. Apr. 5, 2016), *report and recommendation adopted*, No. 2:08-CV-00906, 2016 WL 5661233 (S.D.W. Va. Sept. 28, 2016).

been indifferent to his health concerns and digestive issues created by the soy products contained in the Special Religious Diet. *Id.* at 6. Additionally, Plaintiff asserts that the policy violates his religious tenets through the implementation of the "Kashering Ceremony" which he does not believe in. *Id.* at pg. 10; *see also* Policy Directive 511.00 [ECF No. 2, Exhibit H] at pg. 3.

Plaintiff also alleges that Policy Directive 511.00 violates the First Amendment Establishment Clause in that the Religious Special Diet favors and advances the Hare Krishna faith and Brahman dietary practices and inhibits the dietary practice of other religions. *Id.* at pg. 13. Lastly, Plaintiff claims certain violations of his rights pursuant to the Equal Protection Clause of the Fourteenth Amendment. *Id.* at pg. 15. Specifically, Plaintiff asserts that other "similarly situated" inmates in general population are "allowed to eat foods such as onion, tomatoes, and other vegetables also including fish . . .[,]" which Plaintiff is not permitted to eat under the Religious Special Diet. *Id.* Even further, Plaintiff argues that he is being treated differently than those inmates who practice the Hare Krishna faith. *Id.* at pg. 16. Plaintiff states that such disparate treatment is "not reasonably related to any legitimate enological interests" and that there are less restrictive alternatives. *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). In *Ashcroft v. Iqbal*, the United States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a

[party] has acted unlawfully." *Id.* Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193 (internal quotations omitted). Such "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. LAW AND ARGUMENT

Plaintiff brings his claim pursuant to 42 U.S.C. § 1983, which provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." In order for an inmate to be able to bring a § 1983 action, the inmate must first exhaust all available administrative remedies pursuant to the Prison Litigation Reform Act (hereafter "PLRA"). *See* 42 U.S.C. 1997(e)(a). Thus, the Court must consider this threshold issue prior to addressing the merits of Plaintiff's claims.

#### A. Plaintiff has exhausted his administrative remedies pursuant to the Prison Litigation Reform Act.

The PLRA requires that inmates exhaust their available administrative remedies promulgated by the correctional facility in which the inmate is housed prior to initiating civil actions related to the conditions of confinement under § 42 U.S.C. 1983 or any other federal law. *See Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). Here, it appears that Plaintiff has exhausted his administrative

remedies prior to filing this civil action regarding his religious diet. [ECF No. 2, Exhibits A and J]. Consequently, Plaintiff's Complaint cannot be dismissed pursuant to the PLRA.

As to the merits of Plaintiff's Complaint, the Plaintiff is not entitled to relief because he has not suffered any violations of his rights under the First Amendment Free Exercise and Establishment Clauses, RLUIPA, or the Equal Protection Clause of the Fourteenth Amendment.

**B. Plaintiff's claims pursuant to RLUIPA are not meritorious because he cannot meet his initial burden to prove that the policy at issue "substantially burdens" his exercise of religious freedom.**

Plaintiff alleges that Defendants' intentional denial of a religiously mandated pescatarian diet consistent with his religion violates his rights under RLUIPA. *See* Compl. at pg. 4-5. However, because Plaintiff cannot meet his initial burden to prove that the policies of the Defendants "substantially burden" his exercise of religious freedom, his claims must fail as a matter of law.

The Plaintiff asserts his claim under RLUIPA, 42 U.S.C. § 2000cc, *et seq.*, which provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden promotes a compelling governmental interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a). Congress created RLUIPA in response to Supreme Court decisions holding that laws of general applicability that incidentally burden religious conduct do not offend the First Amendment. *See Madison v. Riter*, 355 F.3d 310, 314 (4th Cir.2003) (discussing *Employment Division v. Smith*, 494 U.S. 872, 890, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990)). Consequently, RLUIPA provides an even greater protection of inmates' freedom to engage in religious conduct than does the Free Exercise Clause of the First Amendment.

"To succeed on a claim of religious discrimination under either of these provisions, an inmate must make an initial showing that he sincerely holds a religious belief and that action by the defendants substantially burdens his religious freedom or expression." *Wilson v. United States*,

6

332 F.R.D. 505, 523 (S.D.W. Va. 2019). RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The Supreme Court has defined "substantial burden" as "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718, 101 S. Ct. 1425, 67 L.Ed.2d 624 (1981), or an action that compels a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S. Ct. 1790, 10 L.Ed.2d 965 (1963).

"No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate [his] religious beliefs or abandon one of the precepts of [his] religion." *Rountree v. Clarke*, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (quoting *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007)). "[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Baines v. Hicks*, No. 3:14CV616, 2016 WL 7380558, at *10 (E.D. Va. Dec. 20, 2016) (quoting *Smith*, 502 F.3d at 1278); *Sullivan v. Younce*, No. 3:15CV10, 2017 WL 655175, at *9 (E.D. Va. Feb. 16, 2017) (holding that removal of purported religious materials from inmate's cell was an inconvenience, not a substantial burden on his exercise of religion).

Once a plaintiff satisfies the requirement to demonstrate that the challenged practice substantially burdens his exercise of religion, the burden of persuasion then shifts to the defendant to demonstrate that the government practice or policy is "the least restrictive means of furthering

a compelling government interest." *See Lovelace v. Lee*, 472 F.3d 174, 189 (4th Cir. 2006). When applying the "compelling government interest" standard, courts must consider the "context" of the claim and give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 189-90 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S. Ct. 2113, 161 L.E.2d 1020 (2005)). Accordingly, the court should give particular consideration to prison security concerns. *Id.* Furthermore, RLUIPA is not intended to give prisoners an unfettered right to religious accommodation "over an institution's need to maintain order and safety." *Id.* Because the RLUIPA guarantees greater religious freedom to Plaintiff than does the First Amendment, Defendants' analysis will focus primarily on Plaintiff's claim under the RLUIPA.

Here, Plaintiff cannot meet his burden to show that the policies at issue put a "substantial burden on religious exercise" because Plaintiff "was not asked to choose between violating a religious precept or depriving [himself] of adequate nutrition. An alternative meat-free diet [was] available that is acceptable under Islamic law." *Turner-Bey v. Maryland*, No. JFM-10-2816, 2012 U.S. Dist. LEXIS 133862, 2012 WL 4327282, at *8 (D. Md. Sept. 18, 2012). In *Turner-Bey v. Maryland*, the United States District Court for the District of Maryland considered the issue of whether a lacto-ovo vegetarian diet, which included dairy products but no meat or fish, provided by the Maryland Division of Correction ("DOC") to Muslim inmates, in lieu of a Halal diet that includes ritually slaughtered meats, was an undue burden on the plaintiff's free exercise of religion. *Id.* The court concluded that DOC's failure to provide a specific Halal diet containing meat did not "substantially burden" the plaintiff's exercise of religion because the plaintiff did not maintain that he is religiously obligated to eat Halal meat. *Id.* Rather, Islam prohibits eating meat that is not

8

Halal. *Id.* Accordingly, the court reasoned that Muslim inmates are "not asked to choose between violating a religious precept or depriving [themselves] of adequate nutrition; an alternative meat-free diet is available that is acceptable under Islamic law." *Id.*

Similarly, here, Plaintiff was provided with a "meat-free diet" that is "acceptable under Islamic law." *Id.* Plaintiff asserts that WVDOC Policy Directive 511.00 is forcing him to consume the dietary practice of the Hare Krishna, which violates his religious tenens. *See* Pl.'s Mem. of Law [ECF No. 3] at pg 2. However, WVDOC Policy Directive 511.00 actually creates one Religious Special Diet that meets the dietary restrictions of all religions. In order to accomplish this, the diet does not contain any meat products. Plaintiff's allegations that the failure to provide fish (the only meat he can eat) or another non-soy meat substitute is in violation of the RLUIPA is not supported by the law, because Defendants did not require him to eat foods "forbidden by his religion," which in Plaintiff's case, would be any meat other than fish. *See Boyd v. Lehman*, No. C05-0020-JLR, 2006 U.S. Dist. LEXIS 94223, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) (finding no substantial burden on exercise of religious beliefs because "[t]he ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat foods which are forbidden by his religion, it simply denies him one component of the diet which he contends should be provided.").

Further, as stated above, the RLUIPA does not give prisoners an unfettered right to religious accommodation. *See Lovelace*, 472 F.3d at 189-90. Rather, the statute mandates "due deference to the experience and expertise of prison and jail administrators." *Id.* Because Plaintiff does not have an "unfettered right" to the religious accommodation of his choice and because an "alternative meat-free diet is available that is acceptable under Islamic law," Thus, Plaintiff has not proven a substantial burden on his ability to exercise his religion.

Lastly, Plaintiff fails to prove that the Defendants "put substantial pressure" on him to "modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)). Similar case law supports this conclusion. *See, e.g.*, *Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008) (affirming the lower court's grant of summary judgment for the defendants on the RLUIPA and First Amendment claims on the ground that the plaintiff inmate had failed to show defendants placed a substantial burden on his ability to practice his religion by failing to provide him with Halal meat); *Wells-Bey v. Kopp*, C.A. No. ELH12-2319, 2013 U.S. Dist. LEXIS 54839, 2013 WL 1700927, at *10 (D. Md. April 16, 2013) (finding that DOC did not violate the Constitution or RLUIPA by failing to provide inmate with a non-vegetarian Halal diet).

Because Plaintiff's Complaint fails to allege how Defendants "put substantial pressure" on him to "modify his behavior and to violate his beliefs" simply by communicating a policy which still allows Plaintiff to eat food which does not violate his pescatarian diet, his RLUIPA claim fails. Not being offered fish is not enough to meet the burden necessary for Plaintiff's RLUIPA claim. *See Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008). Furthermore, there is no policy that would prevent Plaintiff from choosing to participate in the "regular diet" and then self-selecting which foods to eat from his tray according to his religious belief. Plaintiff could choose not to eat any meat served on his tray that is not fish, although he would not be given "extra" portions from other "permitted" food groups served that day and would not be allowed to substitute the meat for another type of food.

Even under the Religious Special Diet, Defendants are not required to serve any faith group *all* of the items they are allowed to eat and the same can be said for regular trays, inmates who

partake in the regular diet do not get served all the items they may want or desire to eat, and they also may choose not to eat a particular food on their tray as result of personal dislike or religious belief. On the regular diet, Plaintiff would be permitted to eat all fruits and vegetables, as desired, and also fish when it is served. As previously stated, the Religious Special Diet was designed to be reflective of dietary *restrictions*, and by its very nature could not possibly be inclusive of every food each different faith is permitted to eat.

What the Plaintiff is suggesting is that each inmate should be given substitutions according to their individual faith, thus creating a new religious diet according to his own needs. If every inmate alleged the same, Defendants could be required to customize countless numbers of "religious diets." It would not be feasible for Defendants to meet such demands when considering security constraints, cost, and the orderly running of all the WVDCR facilities. As for Plaintiff's claims regarding his health concerns and the soy products served on the Religious Special Diet, the Plaintiff has failed to put forth evidence of any medically diagnosed allergy to soy. If it were to be medically determined that Plaintiff had a soy allergy, he would then be provided with a soy alternative under the Religious Special Diet. For all of these reasons, Plaintiff's RLUIPA claims must fail as a matter of law.

**C. Because RLUIPA is a more stringent standard than the First Amendment standard, and because the case law is clear that Plaintiff's claim fails under RLUIPA, Plaintiff's claim against Defendants for violation of his First Amendment rights must also fail.**

Plaintiff further alleges that Defendants' intentional denial of a religiously mandated pescatarian diet also violates his rights under the First Amendment. *See* Compl. at pg. 4-5. However, because RLUIPA is a "more stringent standard," and because the case law is clear that Plaintiff's claim fails under RLUIPA, it follows that Plaintiff's claims necessarily must fail under the First Amendment.

The Free Exercise Clause of the First Amendment to the United States Constitution guarantees inmates the right to free exercise of religion while incarcerated, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L.Ed.2d 282 (1987), and prohibits customs or policies that are designed to suppress religious beliefs and practices. *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). Thus, prisoners must be given "reasonable" opportunities to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). However, the United States Supreme Court has cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration."  *Lovelace*, 472 F.3d at 199 (citing *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974)). Thus, "courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." *Id.* (citing *O'Lon*e, 482 U.S at 349-50, 107 S. Ct. 2400); *Tuner v. Safley*, 482 U.S. 78, 84-85, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987)).

The appropriate inquiry in determining whether a prison regulation or policy violates an inmates constitutional rights, is whether the regulation "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89 (defining the appropriate standard as requiring a rational basis rather than strict scrutiny analysis). In determining that the appropriateness of this lower standard of review, the Court explained that "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.*

The Court in *Turner* provided four factors for courts to consider when "determining the reasonableness of the regulation at issue." *Id.* This test asks courts to consider the following factors:

(1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

*Lovelace*, 472 F.3d at 200 (citing *Turner*, 482 U.S. at 89-92, (internal quotation marks and citations omitted)).

Here, just as Plaintiff fails to meet his burden with respect to his RLUIPA claims, he also fails to meet his burden regarding his First Amendment allegations as well. Courts have already looked at a similar issue and established that the type of "vegetarian" diet Plaintiff was being offered is not a violation of an inmate's First Amendment rights to freely exercise their religion. *See Abdul–Malik v. Goord*, No. 96 CIV. 1021(DLC), 1997 U.S. Dist. LEXIS 2047, 1997 WL 83402, at *6-7 (S.D.N.Y. Feb. 27, 1997) (finding, after a bench trial, that a Muslim inmate's rights were not violated by the prison's failure to provide Halal meat three times a week because a Muslim may eat an exclusively vegetarian diet without violating his religion); *see also Watts v. Byars*, Civil Action No. 6:12-1867- JFA-KFM, 2013 U.S. Dist. LEXIS 125997, at *11-13 (D.S.C. June 10, 2013); *see, e.g.*, *Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008) (affirming the lower court's grant of summary judgment for the defendants on the RLUIPA and First Amendment claims on the ground that the plaintiff inmate had failed to show defendants placed a substantial burden on his ability to practice his religion by failing to provide him with Halal meat); *Wells-Bey v. Kopp*, C.A. No. ELH12-2319, 2013 U.S. Dist. LEXIS 54839, 2013 WL 1700927, at *10 (D. Md. April 16, 2013) (finding that DOC did not violate the Constitution or RLUIPA by failing to provide inmate with a non-vegetarian Halal diet).

Thus, Plaintiff cannot disproved the validity of the WVDOC Policy Directive 511.00 because he has failed to even raise a valid RLUIPA claim, and because Courts have already established that providing a vegetarian diet such as the Religious Special Diet at issue does not violate the Free Exercise Clause of the First Amendment.

Plaintiff further argues that Defendants have violated the Establishment Clause of the First Amendment by favoring the Hare Krishna faith to the detriment of other religious tenets, such as Plaintiff's pescatarian diet. *See* Pl.'s Mem. of Law. [ECF No. 3] at pg. 12. "The interplay between RLUIPA and the Establishment Clause in the prison context was examined in *Cutter v. Wilkinson,* 844 U.S. 709 (2005), where the Supreme Court noted that "the government may . . . accommodate religious practices . . . without violating the Establishment Clause[.]" *Turner-Bey v. Maynard*, No. CIV.A. JFM-10-2816, 2012 WL 4327282, at *9 (D. Md. Sept. 18, 2012) (citing *Cutter*, 844 U.S. at 713). The Supreme Court held that "RLUPIA's requirement that prison officials increase the level of protection of prisoners' religious rights did not violate the Establishment Clause, provided a privileged status is not imposed on any particular religious sect or a particular sect is not singled out for disadvantageous treatment." *Id.* (citing *Cutter*, 844 U.S. at722-24).

Here, the purpose of the Religious Special Diet was to provide a diet that met the dietary restrictions imposed by all various beliefs or religious tenets represented by the inmate population. Thus, it neither advances or inhibits religion, and was not created to provide a "privileged status" on any one particular religious sect, including the Hare Krishna. Because Hare Krishna faith has the most dietary restrictions (no meat and dairy), it follows then that the Religious Special Diet conforms to all such restrictions. Without such restriction, the inmates who practice the Hare Krishna faith would be forced to violate the tenets of their faith. *See Turner-Bey*, at *10. Plaintiff is not being forced to violate his religious tenets by partaking in the Religious Special Diet and

thus is not being singled out for "disadvantageous treatment," as prohibited by the Establishment Clause. Thus, Plaintiff's First Amendment claims under the Free Exercise and Establishment Clauses necessarily must fail as a matter of law.

**D. Plaintiff's claims pursuant to the Equal Protection Clause of the Fourteenth Amendment must fail because Plaintiff has not demonstrated that he was intentionally treated differently than similarly situated inmates.**

Lastly, Plaintiff's asserts he is being treated differently from other inmates similarly situated and that such disparate treatment was purposeful, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 15.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Turner-Bey*, at *10 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985)). In order to demonstrate that his equal protection rights were violated, a plaintiff must show that he was treated differently than similarly situated inmates and that the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. Appx. 609, 611 (3rd Cir. 2009). "If the discrimination was based on plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, plaintiff must show that the discrimination did not bear a rational relationship to a legitimate government purpose." *Turner-Bey*, at *10 (citing *Cleburne*, 473 U.S. at 440-42). "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner's claims under the equal protection clause ... must still be analyzed in light of the special security and management concerns in the prison system." *Morrison v. Garraghty,* 239 F.3d 648, 655 (4th Cir. 2001).

Here, Plaintiff cannot demonstrate that he is being treated differently than similarly situated inmates in general population. First, Plaintiff argues that he is being treated differently than

similarly situated inmates in general population who "are allowed to eat foods such as onions, tomatoes, and other vegetables also including fish  . . . some of which are Christians, Buddhists, or other religions who receive a regular tray." *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 15.

Plaintiff made the choice to partake in the Religious Special Diet, which he was not forced or coerced to partake in, as evidenced by the numerous forms Plaintiff completed where he specifically requested the Religious Special Diet. *See* Religious Special Diet Request and Authorization Forms [ECF No. 2, Exhibits D, F]. Plaintiff certainly had the option to partake in the regular diet, just the same as the majority of inmates of the general population, as described by Plaintiff. Just like Plaintiff cannot request substitutes for the Religious Special Diet (without an allergy), inmates who partake in the regular diet can also not request special accommodations for their diet. Policy Directive 511.00 does not force Plaintiff to eat foods that are prohibited by his religious tenets, just the same as the regular diet does not force other inmates to eat foods they do not like, or cannot eat for their own religious beliefs.

Second, Plaintiff asserts that the policy intentionally discriminates between inmates who practice the Hare Krishna faith and inmates who practice other religious beliefs, such as Plaintiff. *See* Pl.'s Mem. of Law [ECF No. 3] at pg. 16. This argument must also fail because while the diets of the two religions certainly differ, the dietary needs and restrictions of both groups are being accommodated and thus there is no evidence of discriminatory action. *See Turner-Bey*, at *10. Consequently, the Plaintiff's claims pursuant to the Equal Protection Clause must also fail as a matter of law.

**WHEREFORE**, based upon the foregoing, Defendants respectfully requests that this Honorable Court enter an Order dismissing this action, as well as all other relief deemed just and proper.

Respectfully submitted,

BETSY JIVIDEN, *et al.*,
By counsel,

PATRICK MORRISEY
ATTORNEY GENERAL

**/s/ Jodi Tyler**
Jodi Tyler (WVSB #13234)
Assistant Attorney General
1900 Kanawha Blvd., East
Building 1, Suite W-400
Charleston, WV  25305
Telephone: (304) 957-2518
jtyler@wvago.gov
*Counsel for Defendants*

THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**RICKY VINCENT PENDLETON,**

      **Plaintiff,**

**v.**                                                             **Civil Action No. 2:22-cv-00178**

**BETSY JIVIDEN,** *et al.*,

      **Defendants.**

## CERTIFICATE OF SERVICE

      I, Jodi Tyler, Assistant Attorney General and counsel for Defendants, do hereby certify that on June 8, 2022, I electronically filed the foregoing "Defendants' Memorandum of Law in Support of Motion to Dismiss" with the Clerk of Court using the CM/ECF system.  I also served a true and accurate signed copy of this document to Plaintiff, a non-ECF participant, with first-class postage prepaid to the following addresses:

Ricky Vincent Pendleton<br>
OID #3572914<br>
Mount Olive Correctional Complex<br>
1 Mountainside Way<br>
Mount Olive, WV 25185

                                         **/s/ Jodi Tyler**
                                         Jodi Tyler (WVSB #13234)
                                         Assistant Attorney General
                                         1900 Kanawha Blvd., East
                                         Building 1, Suite W-400
                                         Charleston, WV  25305
                                         Telephone: (304) 957-2518
                                         jtyler@wvago.gov
                                         *Counsel for Defendants*