IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RICKY VINCENT PENDLETON,

        Plaintiff

v.                                     Case No. 2:22-cv-00178

BETSY JIVIDEN Commissioner, *et al.*,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion to Dismiss [ECF No. 15] and Plaintiff's Motion for Severance from Policy Directive Involving the New Special Religious Diet Program to Establish the Pescetarian Diet Practice [ECF No. 23]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of these motions to the Magistrate Judge is **WITHDRAWN.** The undersigned will proceed to rule on both motions.

## I.    Relevant Procedural History.

Plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia. In addition to the present civil action, Plaintiff previously filed three other civil cases pertaining to his conditions of confinement at MOCC herein which have been dismissed. *See Pendleton v. Hinte*, Case No. 2:15-cv-

01903 (S.D. W. Va., Mar. 27, 2019); *Pendleton v. Ballard*, No. 2:16-cv-05389 (S.D. W.Va. Feb. 6, 2017); and *Pendleton v. Ames*, 2:21-cv-00249 (S.D. W. Va. Mar. 16, 2023).

### A.   Plaintiff's allegations.

On April 12, 2022, Plaintiff filed the instant complaint, pursuant to 42. U.S.C. § 1983, against Betsy Jividen ("Jividen"), Commissioner of the West Virginia Division of Corrections and Rehabilitation (hereafter "WVDCR"), C.J. Rider ("Rider"), WVDCR Deputy Director of Reentry and Offender Activities[1], and Donnie Ames ("Ames"), the Superintendent at MOCC.  Plaintiff alleges violations of his rights under the Free Exercise and Establishment Clauses of the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, and the Fourteenth Amendment Equal Protection Clause, all arising out of the WVDCR's "Religious Special Diet" policies.

Specifically, Plaintiff's complaint alleges that Defendants are preventing him from practicing his "sincerely held belief of God Centered Culture of Islam" with policies that allegedly force him to forfeit his religious dietary practice of a "pescatarian diet."  [ECF No. 2 at 4-5].  According to Plaintiff, this religious pescatarian diet allows him to eat all vegetables, fruits, spices, herbs, dairy products, and fish.  [ECF No. 3 at 9]  Plaintiff further alleges that the single Religious Special Diet offered by the prison contains soy-based protein products as a meat substitute, which he claims he is "forced to consume," causing him "abdominal pain, digestive

---

[1] According to Defendants, Rider manages inmate religious activities, including the "Religious Special Diet" at issue here.

problems, at times vomiting, and other issues like serious constipation." [*Id.* at 2].
Although Plaintiff claims that he has an allergy to soy products, he does not allege
that he has been affirmatively diagnosed as having such an allergy by prison medical
staff (or any other medical provider); nor has he been given an order for a medically
restricted diet by any medical provider.

Plaintiff further claims that being forced to choose between the regular prison
diet, which contains meat and fish, and the Religious Special Diet, which does not
contain meat or fish, imposes a substantial burden on his right to exercise his
religious beliefs through consuming a pescatarian diet and violates the First
Amendment Free Exercise Clause and RLUIPA. [*Id.*] He further contends that
Defendants are indifferent to his religious beliefs and that Policy Directive 511.00
(governing the Religious Special Diet) "makes a 'conscious or intentional interference'
with Plaintiff's rights." [*Id.* at 5].

Plaintiff further alleges that the Religious Special Diet favors the dietary
practices of the Hare Krishna and Brahman religions and also provides for a Rabbi
to bless utensils. Plaintiff alleges these practices exhibit a "bias towards certain
religions" that violates the First Amendment Establishment Clause and the
Fourteenth Amendment Equal Protection Clause. [ECF No. 2 at 4-5; ECF No. 3 at 9-
16].

### B.     Defendants' motion to dismiss.

Defendants have moved to dismiss the complaint for failure to state a claim
upon which relief can be granted pursuant to Rule 12(b)(6). Defendants assert that

Plaintiff is not entitled to relief on any of his claims because he has not suffered any violations of his rights under the First Amendment Free Exercise and Establishment Clauses, RLUIPA, or the Equal Protection Clause of the Fourteenth Amendment. [ECF No. 15 at 1-2; ECF No. 16 at 6].

According to Defendants' memorandum of law in support of their motion to dismiss, WVDCR Policy Directive 511.00 offers one uniform Religious Special Diet to inmates, which it is not particular to any one religion.  [ECF No. 16 at 2].  Policy Directive 511.00 (hereinafter "the policy") outlines the dietary restrictions of the Kosher, Halal, and Brahman diets, before stating that "the Religious Special Diet is intended to provide a nutritionally adequate meal that meets dietary restrictions imposed by various beliefs."  [Policy Directive 511.00, ECF No. 2, Ex. H at 2].  The policy further explains that "the Religious Special Diet is not intended to provide everything an inmate of any faith may eat" and the policy explicitly states that "[m]eat is never an item in the religious special diet."  [*Id.*]  If an inmate chooses not to partake in the Religious Special Diet, then he or she would receive the "regular" diet, which may contain various types of meat and sometimes fish.  [ECF No. 3 at 3, 6].  As further noted by Defendants:

> The Religious Special Diet was designed to meet the dietary *restrictions* of each faith group represented in the inmate population.  The most restrictive is the Hare Krishna faith, which follows the Brahman diet. Because the Religious Special Diet is intended to comply with the dietary restrictions of *all* three of the above-identified religions and all other unidentified religions, and the Brahman diet does not contain any meat products, the Religious Special Diet also does not offer any meat products.  [footnote omitted].  *See id.*  In recognizing that some religions allow for certain foods/food groups not included in the Religious Special Diet, the policy explicitly states that "an inmate may supplement his/her

4

diet by purchasing allowable items . . . from the commissary, if they are readily available in the commissary."  *Id.* at pg. 4.  However, "[t]his does not require the commissary to carry items for specific faith groups."  *Id.*

[*Id.* at 2-3].

As will be addressed in greater detail *infra*, Defendants assert that the prison's dietary policies neither place a substantial burden on Plaintiff's exercise of his religious rights nor advance or inhibit particular religious beliefs, and, thus, do not violate either the First Amendment or RLUIPA.  [ECF No. 16 at 6-15].  Defendants further contend that Plaintiff has not plausibly alleged that he is being purposefully treated differently from other similarly situated inmates in order to sufficiently plead an equal protection violation under the Fourteenth Amendment.  [*Id.* at 15-16]. Consequently, Defendants assert that Plaintiff's complaint must be dismissed in its entirety under Rule 12(b)(6).

**C.    Plaintiff's response to the motion to dismiss.**

On June 16, 2022, Plaintiff filed a reply and objections to Defendants' motion to dismiss [ECF No. 17] and a memorandum in support thereof [ECF No. 18]. Plaintiff claims that the Religious Special Diet policy does not permit substitutions for anyone with soy-based allergies and, thus, Defendants' enforcement of the policy demonstrates indifference and places a "substantial burden" on Plaintiff.  [ECF No. 16 at 2-7].  Plaintiff further contends that the policy violates his equal protection rights because he is being denied a pescetarian diet while other prisoners (apparently those on the regular diet) are served fish, along with fruits and vegetables, which he is permitted to eat.  [*Id.* at 7-8].

D.     **Plaintiff's motion for severance from policy directive.**

On July 7, 2022, Plaintiff filed an additional motion seeking injunctive relief in the form of an order severing him from WVDCR Policy Directive 511.00 concerning the Religious Special Diet and having his own "Pescetarian Diet" established.  [ECF No. 23].  Plaintiff's motion largely repeats the arguments made in his previous briefs. Plaintiff acknowledges that his alleged soy-based allergy "is a medial issue," but further contends, for the first time, that his inability to eat soy products makes them "Haram" (forbidden) under Islamic law.  [*Id.* at 2-3].  Accordingly, he alleges that being "forced" to consume such products under the Religious Special Diet, with no option for substitutions, substantially burdens his religious rights and supports his severance therefrom.  [*Id.*]

On July 21, 2022, Defendants responded to Plaintiff's motion for severance, incorporating their arguments from their prior briefing.  [ECF No. 27].  On August 1, 2022, Plaintiff filed a reply brief reiterating his prior arguments.  [ECF No. 28].  Both Defendants' motion to dismiss and Plaintiff's motion for severance are fully briefed and ripe for resolution.

II.     **Standards of Review**

A.     **Motions to dismiss under Rule 12(b)(6).**

Defendants' motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

**B. Motions for preliminary and permanent injunctive relief.**

Rule 65(a) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction, an extraordinary remedy, only on notice to the adverse party. Fed. R. Civ. P. 65(a). "[P]reliminary injunctions are not to be granted automatically." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). Rather, the discretion of the court to issue such an injunction should be "sparingly exercised." *Id.* at 286.

To obtain a preliminary injunction, a movant must demonstrate that "(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*"). <u>All four</u> factors must be met to justify this extraordinary relief. *Real Truth*, 575 F.3d at 347.

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). * * * Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that the movant must make a clear showing that he is likely to be irreparably harmed, and particular attention must be paid to the public consequences in employing the extraordinary remedy of an injunction. The movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d

8

802, 812 (4th Cir. 1991) (citation omitted).  Additionally, courts should grant preliminary injunctive relief involving the management of correctional facilities only under exceptional and compelling circumstances.  *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Miles v. Bell,* No. 20-cv-2107, 2021 WL 229674, at *5 (D. Md. Jan. 22, 2021) (finding preliminary injunctive relief was not warranted on prison conditions claims).

Likewise, a plaintiff seeking a permanent injunction must show that: "(1) [he] has suffered irreparable injury; (2) the available legal remedies are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction."  *Herrera v. Finan*, 176 F. Supp. 3d 549, 568 (D.S.C. 2016), *aff'd*, 709 F. App'x 741 (4th Cir. 2017) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]"  *eBay Inc.*, 547 U.S. at 391.

"It is well settled that any deprivation of constitutional rights 'for even minimal periods of time' constitutes irreparable injury."  *Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-3913-BHH, 2020 WL 553855, at *12 (D.S.C. Feb. 3, 2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Nonetheless, an injunction will not be issued if there is only a "possibility" of irreparable injury.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Additionally, when considering the balance of hardships between the litigants and the impact on the public at large, prior to issuing an

injunction, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24. "In granting injunctive relief, a court must also pay particular regard for the public consequences of employing the extraordinary remedy of injunction. Where the harms of a particular injunctive remedy outweigh the benefits, a court may decline to adopt it." *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 201 (4th Cir. 2005).

III.   **Discussion**

   A.   **Plaintiff has not demonstrated a substantial burden on the exercise of his religious beliefs.**

Defendant's motion to dismiss asserts that Plaintiff cannot meet his initial burden to prove that the Religious Special Diet "substantially burdens" the exercise of his religion and, thus, Defendant asserts that his complaint fails to state a plausible claim under either RLUIPA or the First Amendment Free Exercise Clause. Because the standard under RLUIPA is more stringent than that under the First Amendment, I will first address Plaintiff's RLUIPA claim. *See Madison v. Virginia,* 474 F.3d 118, 127 (4th Cir.2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution").

RLUIPA claim

Section 3 of RLUIPA governs restrictions on religious exercise by institutionalized individuals by state or local governments. RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A substantial burden "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand.'" *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). Again quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the significance of the particular belief or practice in question." *Lovelace,* 472 F.3d at 187 n.2. *Id.* The Supreme Court has described RLUIPA as an "expansive protection for religious liberty" and noted that "Congress mandated that this concept 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (citing § 2000cc-3(g)).

Nonetheless, RLUIPA does not give prisoners an unfettered right to religious accommodation. Rather, the statute mandates "due deference to the experience and expertise of prison and jail administrators." *Lovelace*, 472 F.3d at 210 (quoting *Cutter*

*v. Wilkinson*, 544 U.S. 709, 723 (2005)).  Plaintiff bears the initial burden of proving that Defendants' actions substantially burden his sincere religious exercise.  *Holt*, 135 S. Ct. at 862.  If Plaintiff meets this burden, then Defendants must demonstrate that such substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering such interest.  *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013); *see also Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) ("[I]f the plaintiff cannot show that their exercise of religion is substantially burdened by the [government's] policy, the [government] is not required to come forward with proof of its interest.")

Defendants assert that Plaintiff cannot meet his burden to show that the dietary policy at issue puts a substantial burden on his religious exercise because the religious diet offered to all inmates at WVDCR facilities is a meat-free diet that is acceptable under Islamic law.  (ECF No. 16 at 8).  Specifically, they contend:

> Here, Plaintiff cannot meet his burden to show that the policies at issue put a "substantial burden on religious exercise" because Plaintiff "was not asked to choose between violating a religious precept or depriving [himself] of adequate nutrition.  An alternative meat-free diet [was] available that is acceptable under Islamic law."  *Turner-Bey v. Maryland*, No. JFM-10-2816, 2012 U.S. Dist. LEXIS 133862, 2012 WL 4327282, at *8 (D. Md. Sept. 18, 2012).  In *Turner-Bey v. Maryland*, the United States District Court for the District of Maryland considered the issue of whether a lacto-ovo vegetarian diet, which included dairy products but no meat or fish, provided by the Maryland Division of Correction ("DOC") to Muslim inmates, in lieu of a Halal diet that includes ritually slaughtered meats, was an undue burden on the plaintiff's free exercise of religion.  *Id.*  The court concluded that DOC's failure to provide a specific Halal diet containing meat did not "substantially burden" the plaintiff's exercise of religion because the plaintiff did not maintain that he is religiously obligated to eat Halal meat.  *Id.*  Rather, Islam prohibits eating meat that is not Halal.  *Id.*  Accordingly, the court reasoned that Muslim inmates are "not asked to

choose between violating a religious precept or depriving [themselves] of adequate nutrition; an alternative meat-free diet is available that is acceptable under Islamic law." *Id.*

[*Id.* at 8-9]. Defendants further contend that Plaintiff's assertion that the failure to provide fish (the only "meat" he can eat) or another non-soy meat substitute violates RLUIPA is not legally supported because Defendants do not require him to eat foods "forbidden by his religion," which in Plaintiff's case, would be any meat other than fish. [*Id.* at 9] (citing *Boyd v. Lehman*, No. C05-0020-JLR, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) (finding no substantial burden on exercise of religious beliefs because "[t]he ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat foods which are forbidden by his religion, it simply denies him one component of the diet which he contends should be provided.")). Defendants further emphasize that RLUIPA "does not give prisoners an unfettered right to religious accommodation" and mandates "due deference to the experience and expertise of prison and jail administrators." [*Id.*] (quoting *Lovelace, supra*, 472 F.3d at 189-90).

Defendants further assert that Plaintiff has failed to allege facts demonstrating that their policies "put substantial pressure" on him to "modify his behavior and to violate his beliefs" by not providing him the diet of his choice. *Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Their memorandum further states:

> Plaintiff's Complaint fails to allege how Defendants "put substantial pressure" on him to "modify his behavior and to violate his beliefs" simply by communicating a policy which still allows Plaintiff to eat food which does not violate his pescatarian diet, his RLUIPA claim fails. Not being offered fish is not enough to meet the burden necessary for Plaintiff's RLUIPA claim. *See Pratt v. Corrections Corp. of Am.*, 267 F.

App'x 482, 482-83 (8th Cir. 2008). Furthermore, there is no policy that would prevent Plaintiff from choosing to participate in the "regular diet" and then self-selecting which foods to eat from his tray according to his religious belief. Plaintiff could choose not to eat any meat served on his tray that is not fish, although he would not be given "extra" portions from other "permitted" food groups served that day and would not be allowed to substitute the meat for another type of food. Even under the Religious Special Diet, Defendants are not required to serve any faith group all of the items they are allowed to eat and the same can be said for regular trays, inmates who partake in the regular diet do not get served all the items they may want or desire to eat, and they also may choose not to eat a particular food on their tray as result of personal dislike or religious belief. On the regular diet, Plaintiff would be permitted to eat all fruits and vegetables, as desired, and also fish when it is served. As previously stated, the Religious Special Diet was designed to be reflective of dietary restrictions, and by its very nature could not possibly be inclusive of every food each different faith is permitted to eat.

[ECF No. 16 at 10-11].

Defendants further suggest that Plaintiff's demand for customized dietary substitutions according to one's faith is not feasible and certainly not the least restrictive means of meeting dietary needs of inmates when considering security concerns and the orderly running of the prison. [*Id.* at 11]. Their brief further states:

If every inmate alleged the same, Defendants could be required to customize countless numbers of "religious diets." It would not be feasible for Defendants to meet such demands when considering security constraints, cost, and the orderly running of all the WVDCR facilities. As for Plaintiff's claims regarding his health concerns and the soy products served on the Religious Special Diet, the Plaintiff has failed to put forth evidence of any medically diagnosed allergy to soy. If it were to be medically determined that Plaintiff had a soy allergy, he would then be provided with a soy alternative under the Religious Special Diet. For all of these reasons, Plaintiff's RLUIPA claims must fail as a matter of law.

[*Id.*]

Plaintiff's response to Defendants' motion to dismiss contends that his religious exercise has been substantially burdened because of Defendants' strict policy to either "get with the religious special diet" or "get a regular tray" and that he "has to comply or be in violation [of] the policy directive." [ECF No. 18 at 2]. Plaintiff asserts that this policy "has no consideration for Plaintiff's situation of his experience with eating soy based products" or anyone else who has "some type of allergies towards the soy based products served." [*Id.*] Plaintiff further claims that "he is being forced to practice the New Religious Special Diet Program" despite having informed Defendants of his problems with eating soy, which he claims is supported by his medical records. [*Id.* at 3, 5-6]. He further claims that this policy "definitely put[s] substantial pressure on adherent to modify his behavior and to violate his belief in the God Centered Culture of Islam" and "compels him to choose between "following the precepts of his religion and forfeiting [government] benefits, on the one hand, and abandoning one of the precepts of his religion . . . on the other hand." [*Id.* at 4] (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). He further claims that this is "more than an inconvenience" and, therefore, he contends that he has made a *prima facie* showing of a substantial burden of his religious exercise. [*Id.*]

Plaintiff further claims that "[t]here are approximately 73 Sects of Islamic faith who don't share the same Islamic law as it pertains to their respective belief." [*Id.* at 5]. Thus, Plaintiff maintains that his "sincerely held God Centered Culture of Islam" beliefs are not the same as traditional Islamic beliefs. [*Id.*] His response also appears to now assert that he cannot consume soy as part of his "old esoteric teaching

of the [S]ufi Original Order," yet still appears to rely on his alleged soy allergy as well, and again alleges that he is being "forced" to consume soy products as part of the Religious Special Diet.  [*Id.*]  Therefore, he claims that his religious exercise is substantially burdened by being "forced" to eat foods that are forbidden ("Haram") by his religion and that the least restrictive solution would be to sever him from the Religious Special Diet and allow him to have his own customized "pescetarian" diet. [*Id.*]  His response further asserts that, by "failing to provide an alternative to people who cannot eat soy based products," Defendants are "advocating to force inmates to eat the soy based products regardless of any problems physically and medically" and providing Plaintiff "no other choice but to be in line with this New Religious Special Diet or receive a regular tray" and, thus, violate his religious tenets.  [*Id.* at 6].

Plaintiff's contentions concerning the tenets of his religion are a moving target.  First, he claims he cannot eat soy because of an allergy that makes him sick. Then, in his response, he contends that eating soy is "forbidden" by his religion.  Even assuming both assertions to be true, as the Court must at the motion to dismiss stage, Plaintiff still has not sufficiently alleged facts to establish that his religious exercise has been substantially burdened, because he is not being "forced" to consume soy products or any other food he is forbidden to eat.  Nor is he being denied food required by his religion.

Like the plaintiff in *Turner-Bey*, *supra*, Plaintiff has not plausibly alleged that he is being denied food that he is required to eat and there is no mandate under the applicable laws that he receive all the food items that he is permitted to eat.  2012

16

WL 4327282, at *8.  As further noted by Defendants, numerous similar cases support this conclusion.  *See, e.g., Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008) (affirming the lower court's grant of summary judgment for the defendants on RLUIPA and First Amendment claims on the ground that the plaintiff inmate had failed to show that defendants placed a substantial burden on his ability to practice his religion by failing to provide him with Halal meat); *King v. Hooks*, No. 5:17-CT-3043-FL, 2021 WL 1435294, at *8 (E.D.N.C. Mar. 29, 2021), *aff'd*, No. 21-6561, 2022 WL 355770 (4th Cir. Feb. 7, 2022) ("Although the Fourth Circuit has not addressed the issue in a published opinion, courts generally have found that the provision of a lacto-ovo vegetarian entrée, along with standard grains, fruits, and vegetables, complies with Islamic dietary requirements and does not substantially burden a Muslim inmate's religious exercise"); *Watts v. Byars,* No. 6:12-cv-1867-JFA-KFM, 2013 WL  4736693, at * (D.S.C. June 10, 2013), *aff'd*, 551 F. App'x 77 (4th Cir. Jan. 24, 2014) (Muslim prisoner's failure to receive Halal menu items does not substantially burden religious exercise); *Wells-Bey v. Kopp*, No. ELH-12-cv-2319, 2013 WL 1700927, at *10 (D. Md. April 16, 2013) (finding that DOC did not violate the Constitution or RLUIPA by failing to provide inmate with a non-vegetarian Halal diet); *Malik v. Sabree*, No. 8:06-cv-319-RBH, 2007 WL 781640, at *4 (D.S.C. Mar. 13, 2007) (finding that a Muslim prisoner could practice his faith without Halal products and had not shown that his religious exercise was substantially burdened).

As further aptly noted by Defendants, Plaintiff has a choice to remain on the Religious Special Diet and not eat soy products or he may switch to the regular diet

and avoid eating the meat or other foods that he claims are forbidden by his religious beliefs.  Thus, he is not being "forced" to violate his religious beliefs.  Moreover, to the extent that Plaintiff may be asserting that he does not receive adequate nutrition from a lack of protein or other products he may choose not to eat, Defendants note that he may supplement his meals with protein and other items from the commissary that meet his religious and dietary needs.  He has not alleged that he cannot sufficiently and adequately supplement his diet.  Thus, he has not plausibly alleged facts to demonstrate a substantial burden on his religious exercise and this Court need not further address the compelling interest or least restrictive means elements of Plaintiff's RLUIPA claim.

In sum, Plaintiff is not required to violate the tenets of his faith by eating the vegetarian diet provided through the Religious Special Diet at MOCC and, therefore, his religious exercise is not substantially burdened.  Accordingly, I **FIND** that Plaintiff has not established that WVDCR Policy Directive 511.00 poses a substantial burden on the exercise of his religious beliefs and, thus, his complaint fails to state a plausible claim for relief under RLUIPA.

### First Amendment claim

Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84

(1987). "This approach ensures the ability of corrections officers 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Thus, federal courts are counseled to exercise judicial restraint in matters of prison administration. *Turner*, 482 U.S. at 89. Accordingly, a First Amendment claim turns on the reasonableness of the restriction and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights. *Id.* at 90-91.

However, like the RLUIPA analysis above, before applying this rational basis test, the Court must first determine that the Plaintiff "(1) holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023) (citing *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019)). When a plaintiff fails to demonstrate a substantial burden on the exercise of his religious beliefs under the strict scrutiny required by RLUIPA, such a claim also fails under the Free Exercise Clause of the First Amendment. *See Blake v. Rubenstein*, No. 2:08-cv-00906, 2016 WL 5660355, at *26 (Apr. 4, 2016) (citing *Shabazz v. Johnson*, 2015 WL 4068590 (E.D. Va. July 2, 2015) ("[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well.") (other citations omitted). Thus, consistent with the above findings concerning the failure of Plaintiff's

RLUIPA claim, I **FIND** that Plaintiff's First Amendment Free Exercise Clause claim concerning his religious diet also fails to state a plausible claim for relief and should be dismissed.

### B. Plaintiff's Establishment Clause claim also fails.

Plaintiff's complaint further alleges that Defendants, by "being friendly toward" the "Brahman Diet" and the Hare Krishna religion, while allegedly intentionally and without justification, denying Plaintiff's religious diet, violates the Establishment Clause of the First Amendment. [ECF No. 3 at 9-15]. He further asserts that "the bias toward other religious groups, and to appease the Hare Krishna, Brahman's dietary tenets is wrong." [*Id.* at 10]. Plaintiff alleges that inmate Thomas Drescher, a "devout Hare Krishna practitioner," was "involved in some manner" in the establishment of the New Special Religious Diet in Policy Directive 511.00. [*Id.*] Plaintiff further appears to assert that the policy also demonstrates bias toward Jewish inmates because "a Rabbi comes to bless the utensils or perform rituals (Kashering Ceremony)," which is "not part of his tenets." [*Id.*] Thus, he claims that this "shows favoritism" towards these other religions.

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. 1, cl. 1. For many years, courts analyzed Establishment Clause claims under a three-prong test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which is cited by Plaintiff in his memorandum in support of his complaint. [ECF No. 3 at 12]. Under *Lemon*, to survive constitutional scrutiny, the challenged government action: (1) must be driven

in part by a secular purpose; (2) must have a primary effect that neither advances nor inhibits religion; and (3) must not excessively entangle church and State. 403 U.S. at 612-13; *see also Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 608 (4th Cir. 2012). This is also called "the endorsement test." Both parties herein rely on *Lemon* in their briefing.

Citing to *Lemon*, Plaintiff asserts that there is no secular purpose to the WVDCR's Religious Special Diet Program, "other than appeasing directly towards the Hare Krishna, Brahman's dietary practice, by placing every different religion's dietary practice on the New Religious Special Diet . . . ." [ECF No. 3 at 12]. He contends that the religious diet is "friendly toward the Hare Krishna, Brahman diet practice, but not the other different religions' dietary practices." [*Id.*] In the same vein, Plaintiff contends that the prison's religious diet policy advances the religious practices of the Hare Krishna and Brahman, and inhibits that of other different religions, particularly his God Centered Culture of Islam and his pescetarian diet practices, but also Sunni and Shia Muslims, and those of the Jewish faith. [*Id.* at 13]. He further contends that this fosters an excessive entanglement between church and State. [*Id.*] Consequently, he asserts that the prison's religious diet policy violates the Establishment Clause.

However, in *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022), the Supreme Court essentially eviscerated the *Lemon* test. The Court stated that "*Lemon* and its offshoots had been 'long ago abandoned.'" *Firewalker-Fields v. Lee*, 58 F.4th 104, 121 (4th Cir. 2023) (quoting *Kennedy*, 142 S. Ct. at 2427). Instead, the

Supreme Court held, "the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'"  *Id.* at 2428.  Thus, as expressed by the Fourth Circuit, "[f]rom now on, historical practice and understanding 'must' play a central role in teasing out what counts as an establishment of religion."  *Firewalker-Fields*, 58 F.4th at 122.  The Court further instructed that the proper analysis is to "[i]dentify the relevant tradition, then determine whether the challenged practice is in or out."  *Id.* at 122 n.6.  The Fourth Circuit panel further noted:

> *Kennedy* makes clear that under the Establishment Clause, historical analysis is "the rule rather than some exception."  142 S. Ct. at 2428 (cleaned up).  *See also Town of Greece*, 572 U.S. at 575-77, 134 S. Ct. 1811.  So, in Establishment Clause cases, the plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion.  That requires proving both a set of facts, like in all litigation, and proving that those facts align with a historically disfavored establishmentarian practice.

*Id.*, n.7.  Of course, such historical analysis is going to be context-specific, *i.e.,* dependent upon the setting in which the establishment clause issue arises.  Here, the specific context is accommodation of religious dietary practices in prison.

As noted by the appellant in supplemental briefing in *Firewalker-Fields*, during the colonial era, most crimes met with capital or corporal punishment and long-term confinement was rare.  *See, e.g.,* Harry Elmer Barnes, *The Historical Origin of the Prison System in America,* 12 J. Crim. L. & Criminology 35, 36 (1921).  The advent of penitentiaries for long-term incarceration of criminals grew in the early nineteenth century, when an emphasis was placed on redemption and rehabilitation and "solitary confinement with labor, silence, and religious instruction [were] the norm."  Skotnicki, *Religion and the Development of the American Penal System* 36 &

38 (University Press of America 2000) (describing 19th Century punishment in Pennsylvania and New York penal systems). However, as further noted by these same sources, such religious emphasis in prisons waned after the Civil War. *Id.* at 3 & n.3 (collecting sources). *See* Supp. Appellant Br., *Firewalker-Fields v. Lee*, No. 19-7497, Doc. 57 at 4-6.

The seminal case involving Establishment Clause implications in the modern-day prison context is *Cutter v. Wilkinson*, 544 U.S. 709 (2005), which made a facial challenge to RLUIPA under the Establishment Clause and involved a number of claims concerning restriction of religious rights, but did not directly involve prison dietary practices. The *Cutter* Court emphasized that religious accommodations mandated by RLUIPA would be acceptable so long as they (1) effectively remove government-imposed obstacles to private religious exercise, (2) do not inappropriately burden non-beneficiaries, and (3) are administered neutrally among different faiths. 544 U.S. at 724. As noted by the appellant in *Firewalker-Fields*:

> The three principles *Cutter* articulated are, in substance, a guide to identifying the "hallmarks" of a historically impermissible establishment within the unique prison environment. The first recognizes the critical distinction—also central to the reason of *Kennedy*—between the government tolerating religious exercise by individual citizens and sponsoring religious services of its own. The second resonates with the historical concern about any form of coercion or punishment for dissenters. And the third reflects what the Court has called "[t]he clearest command of the Establishment Clause," historically, which is "that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

*See* Supp. Appellant Br., *Firewalker-Fields v. Lee*, No. 19-7497, Doc. 57 at 4-6. Historically speaking, then, religious accommodations in the prison context do not

23

constitute the establishment of religion where they are neutral and non-coercive. *See also Lee v. Weisman*, 505 U.S. 577, 587 (1992) (the government "may not coerce anyone to support or participate in religion or its exercise.")

Citing to *Cutter* and *Turner-Bey*, Defendants' memorandum of law asserts that the Establishment Clause is not violated "provided a privileged status is not imposed on any particular religious sect or a particular sect is not singled out for disadvantageous treatment." *Turner-Bey*, s*upra*, 2012 WL 4327282, at *9 (citing *Cutter*, 844 U.S. at 722-24). [ECF No. 16 at 14]. Defendants further assert:

> Here, the purpose of the Religious Special Diet was to provide a diet that met the dietary restrictions imposed by all various beliefs or religious tenets represented by the inmate population. Thus, it neither advances or inhibits religion, and was not created to provide a "privileged status" on any one particular religious sect, including the Hare Krishna. Because Hare Krishna faith has the most dietary restrictions (no meat and dairy), it follows then that the Religious Special Diet conforms to all such restrictions. Without such restriction, the inmates who practice the Hare Krishna faith would be forced to violate the tenets of their faith. *See Turner-Bey*, at *10. Plaintiff is not being forced to violate his religious tenets by partaking in the Religious Special Diet and thus is not being singled out for "disadvantageous treatment," as prohibited by the Establishment Clause. Thus, Plaintiff's First Amendment claims under the Free Exercise and Establishment Clauses necessarily must fail as a matter of law.

[*Id.* at 14-15].

Given the framework established in *Kennedy* and *Firewalker-Fields*, I **FIND** that the allegations in Plaintiff's complaint are not sufficient to maintain a plausible claim for relief under the First Amendment Establishment Clause. Plaintiff has not adequately alleged that the Religious Special Diet policy in question was not designed to account for restrictions and practices of all religious faiths or that it is unduly

coercive or disadvantageous to any particular religion. Therefore, Plaintiff has failed to establish that the policy in question is not administered in a neutral and non-coercive manner to sufficiently state a violation of the Establishment Clause as it has been historically applied and, thus, his Establishment Clause claim will be dismissed.

### C.    Plaintiff's Equal Protection claim also fails.

Plaintiff also asserts that the prison's religious diet policy violates his right to equal protection under the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment states in pertinent part, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to succeed on an equal protection claim, however, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is <u>similarly situated</u> and that unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). [Emphasis added].

Specifically, Plaintiff argues that he is being treated differently from allegedly similarly situated inmates in general population who "are allowed to eat foods such as onions, tomatoes, and other vegetables also including fish . . . some of which are Christians, Buddhists, or other religions who receive a regular tray." [ECF No. 3 at 15]. He further repeats his allegations that the diet policy results in disparate treatment of his religious practices and discriminates in favor of the Hare Krishna

and Brahman dietary practices. [*Id.* at 16]. He further claims that such disparate treatment is not for any legitimate penological interest other than cost and he summarily contends that "their goal is to irradicate most of the religions here at the Mount Olive Correctional Complex and Jail." [*Id.*]

> Defendants, on the other hand, assert:
>
> Plaintiff made the choice to partake in the Religious Special Diet, which he was not forced or coerced to partake in, as evidenced by the numerous forms Plaintiff completed where he specifically requested the Religious Special Diet. See Religious Special Diet Request and Authorization Forms [ECF No. 2, Exhibits D, F]. Plaintiff certainly had the option to partake in the regular diet, just the same as the majority of inmates of the general population, as described by Plaintiff. Just like Plaintiff cannot request substitutes for the Religious Special Diet (without an allergy), inmates who partake in the regular diet can also not request special accommodations for their diet. Policy Directive 511.00 does not force Plaintiff to eat foods that are prohibited by his religious tenets, just the same as the regular diet does not force other inmates to eat foods they do not like, or cannot eat for their own religious beliefs.

[ECF No. 16 at 16]. Defendants further assert that Plaintiff has not sufficiently alleged disparate treatment between himself and the Hare Krishna or Brahman inmates because "the dietary needs and restrictions of both groups are being accommodated and thus there is no evidence of discriminatory action." [*Id.*]

Plaintiff's reply brief again asserts that he is "similarly situated" with the general population inmates who "can eat all fruits, vegetables, potatoes, and even fish." [ECF No. 18 at 8]. He further contends that he "doesn't make any choice" and is "forced to [p]ractice this New Religious Special Diet Program." [*Id.*] He also repeats his assertion that this diet program favors the Hare Krishna, Brahman dietary practices. [*Id.*]

26

As noted above, Plaintiff elected to participate in the Religious Special Diet, which is vegetarian in nature and serves no meat, including fish, over the regular prison diet in which he would presumably be offered fruit, vegetables, potatoes, and even fish (although not every day). Because of Plaintiff's election to receive the Religious Special Diet, he is not similarly situated with the general population inmates receiving the regular diet menu and, thus, he cannot plausibly establish an equal protection violation grounded in his alleged disparate treatment from those inmates. Nor has he sufficiently alleged an equal protection claim stemming from the dietary practices of Hare Krishna and Brahman inmates who also requested the Religious Special Diet and are receiving the same diet he is. Accordingly, I **FIND** that Plaintiff's Complaint fails to state a plausible claim for relief under the Equal Protection Clause of the Fourteenth Amendment and that claim will also be dismissed.

### D.     Plaintiff's Motion for Severance from Policy Directive.

Plaintiff's motion for severance from the policy directive at issue is properly construed as a motion for preliminary and permanent injunctive relief. As noted above, to obtain such relief, Plaintiff must demonstrate a likelihood of success on the merits of his claims and that he has or will be irreparably harmed without such relief. Because I have found that Plaintiff's complaint does not plausibly state any violation of the constitutional and federal laws enunciated therein, I further **FIND** that he has not sufficiently established a right to his requested injunctive relief in the form of severance from the Religious Special Diet policy and the establishment of a new

"pescatarian" diet policy.  Therefore, his motion for such injunctive relief must be denied.

## IV.  Conclusion

For the reasons stated herein, I **FIND** that Plaintiff's complaint fails to state any claim upon which relief can be granted against Defendants Jividen, Rider, and Ames.  Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it is hereby **ORDERED** that Defendants' Motion to Dismiss [ECF No. 15] is **GRANTED** and Plaintiff's Motion for Severance from Policy Directive Involving the New Special Religious Diet Program to Establish the Pescetarian Diet Practice [ECF No. 23] is **DENIED**.  It is further **ORDERED** that the Clerk shall remove this civil action from the docket of the court.  A Judgment Order to this effect will be separately entered.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:      March 21, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE